IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MUI SI VOONG,

    Plaintiff,                           No. CIV S-05-1896 PAN

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.                      ORDER

          The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to proceed before a magistrate judge). Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter for further proceedings consistent with this order.

/////

/////

/////

I. Factual and Procedural Background

In a decision dated October 3, 2001, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of diffuse musculoskeletal pain, headaches, chest pain, back pain, borderline intellectual functioning, and mood disorder secondary to chronic pain, with depressive features, but that these impairments do not meet or medically equal a listed impairment; plaintiff was not fully credible; plaintiff has the residual functional capacity to perform a medium level of exertion; plaintiff can perform simple, unskilled work, but not detailed or complex tasks; plaintiff has the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

residual functional capacity to perform a significant range of medium work; a significant number of jobs exists in the national economy that plaintiff is capable of performing; and plaintiff is not disabled. Administrative Transcript ("AT") 16-17.

Plaintiff contends that the ALJ committed two errors. First, plaintiff argues that the ALJ erred by not addressing all of the functional limitations identified by a consulative, examining psychologist. Second, plaintiff believes the ALJ should have utilized the testimony of a vocational expert (VE) prior to determining plaintiff's residual functional capacity.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

/////

improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III.  Analysis

   a.  Remand Is Required because the ALJ's Finding that Plaintiff Is Capable of Simple, Medium Work Is Not Supported by Substantial Evidence in the Record.

The ALJ relied upon multiple medical opinions prior to reaching his findings.  In his evaluation of the medical evidence, the ALJ noted that examining psychologist Dr. Finkel found multiple impairments in plaintiff's mental functioning that impacted her ability to perform many of the tasks required for the full spectrum of work.  AT 14-15.  The ALJ's assessment of plaintiff's residual functional capacity failed to capture the full range of these impairments.

Dr. Finkel examined plaintiff on May 18, 2000.  AT 216-19.  As noted by the ALJ, Dr. Finkel, a licensed psychologist, found plaintiff suffering from mood disorders secondary to chronic pain, with depressive features and borderline intellectual functioning.  AT 14, 218.  In spite of these impairments, Dr. Finkel opined that plaintiff is able to follow simple instructions in her native language of Vietnamese.  AT 219.  Additionally, Dr. Finkel found impairment in plaintiff's ability to attend to and follow through on tasks without direct supervision, interact with others, and maintain attention, concentration, and pace.  Id.  He also noted moderate to marked impairment in plaintiff's ability to work over an eight hour day and attend to a regular work schedule because of her chronic pain and depression.  Id

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity.  SSR 96-8p; see Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").  Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. § 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional

/////

capacity reflects current "physical and mental capabilities"). The ALJ determined that plaintiff had the residual functional capacity to perform a significant range of unskilled medium work.

The ALJ relied on Dr. Finkel's medical opinion along with the absence of clinical evidence in the record find that plaintiff was capable of simple unskilled work. AT 15. This was in error. The nature of unskilled work incorporates some of the limitations imposed by Dr. Finkel. However, when the full extent of the medical evidence in the record is considered, it cannot be said that substantial evidence supports the ALJ's assessment of plaintiff's residual functional capacity.

Some of Dr. Finkel's limitations are inherent in the ALJ's finding. Dr. Finkel found plaintiff could follow simple instructions in Vietnamese. Unskilled work needs little or no judgment to perform simple duties and can generally be learned on the job in 30 days or less. 20 C.F.R. § 416.968(a). Furthermore, unskilled work typically involves dealing with things rather than people or data. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.00(I), 202.00(g); SSR 85-15. As a result, "literacy or the ability to communicate in English [have] the least significance." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.00(g). In addition, this lack of interaction addresses Dr. Finkel's opinion that plaintiff is unable to effectively interact with others.

Dr. Finkel also stated that plaintiff was limited in her ability to attend to and follow through on tasks without direct supervision, and moderately impaired in her ability to maintain attention, concentration, and pace. AT 219. While not as apparent as the restrictions noted above, these impairments do not foreclose a finding that plaintiff can perform unskilled work. The ALJ is charged with interpreting the evidence in the record, and nothing in Dr. Finkel's opinion or anywhere else in the record states that plaintiff requires supervision or is prevented from working because of her inability to maintain concentration, persistence and pace. While other interpretations of these findings are possible, when the ALJ's interpretation of the evidence is reasonable, it is not the Court's province to second guess it. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

1         However, the ALJ's interpretation of Dr. Finkel's opinion that plaintiff was
2 markedly to moderately limited in her ability to complete an eight hour workday or a five day
3 workweek is not reasonable.  While the ALJ relies generally on Dr. Finkel's opinion in reaching
4 his conclusion that plaintiff's residual functional capacity permits her to perform unskilled work,
5 he fails to address this significant limitation.  It is true that there may be over 2,500 unskilled
6 jobs that can be performed at the medium, light and sedentary exertion levels.  SSR 85-15.  It is
7 equally true that each of those jobs requires an employee who can work eight hours a day, five
8 days a week.
9         Plaintiff's residual functional capacity must be based upon all of the relevant
10 medical and other evidence.  20 C.F.R. § 416.945(a)(3).  This evidence includes relevant medical
11 sources, 20 C.F.R. § 416.913, as well as evidence provided by plaintiff, her family, friends, and
12 other persons, 20 C.F.R. § 416.929.  While the ALJ properly discounted these opinions as they
13 concerned what plaintiff could not do, he failed document any evidence supporting his
14 conclusions about what plaintiff could do.  This failure was in error.
15        Other medical opinions in the record found plaintiff unable to perform at the level
16 stated by the ALJ.  AT 224.  In addition, plaintiff complained of disabling physical and mental
17 ailments that kept her from working.  AT 166-75, 297.  These complaints were echoed by her
18 son.  AT 303-16.  The ALJ provided reasons based upon the proper legal standard and supported
19 by substantial evidence in the record for dismissing these medical opinions and statements.  AT
20 14, 15.  However, upon exclusion of these statements, there is little evidence left in the record to
21 support the ALJ's finding that plaintiff is not significantly impaired in her ability to work.
22        The sole support in the record for the ALJ's conclusion is a July 5, 2000, report
23 from the State Agency that found plaintiff only mildly impaired in her ability to complete a
24 regular work day and week.  AT 227.  Mild mental impairments are generally not sufficient to
25 warrant disability.  20 C.F.R. § 416.920a(d)(1).  However, a later assessment on October 30,
26 2000, by the State Agency noted that plaintiff was moderately impaired in her ability to complete

a normal workday or workweek without interruption from her mental ailments. AT 260. Dr. Finkel noted plaintiff's problem in this regard. The single, contradicted State Agency opinion is not substantial evidence.

The ALJ relied upon certain aspects of Dr. Finkel's opinion without discussing other, important limitations contained therein. The ALJ's selective application of Dr. Finkel's findings is not substantial evidence supporting his conclusion that plaintiff can perform a significant range of unskilled, medium work. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001)(holding that the findings were not supported by substantial evidence when the ALJ selectively relied on some entries in the medical record). Remand is necessary in order to permit a proper evaluation of the medical evidence in this case. Based upon this evaluation, continuation of the sequential analysis and use of a VE may become necessary.

b. The ALJ Was Not required to Employ a Vocational Expert Prior to Determining Plaintiff's Residual Functional Capacity.

The ALJ found plaintiff capable of performing unskilled medium work. Upon consultation with the Medical Vocational guidelines, the ALJ determined that plaintiff was not disabled. Given the need to remand for reconsideration of the medical evidence in this case, this finding was in error.

The Medical-Vocational Guidelines ("the grids") are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see

also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[2]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

        The ALJ failed to accurately assess plaintiff's residual functional capacity according to the evidence in the record.  This failure occurred as a result of the ALJ's selective application of the opinion of Dr. Finkel.  However, any analysis of the ALJ's reliance on the grids or failure to employ a vocational expert is premature given the need to remand this case for reconsideration of the medical evidence.

        For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

/////

/////

/////

/////

---

[2] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9thCir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9thCir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1  Accordingly, IT IS HEREBY ORDERED that:

2  1. Plaintiff's motion for summary judgment is denied;

3  2. The Commissioner's cross motion for summary judgment is denied; and

4  3. This matter is remanded for further proceedings consistent with this order.

5  DATED: September 18, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

13
Voong.ss.wpd